COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judges Elder, Humphreys, Kelsey, McClanahan, Petty, Beales,
            Powell and Alston
Argued at Richmond, Virginia


DENNIS B. BARSON, JR.

                                                                OPINION BY
v.      Record No. 2464-09-1                             JUDGE ROBERT J. HUMPHREYS
                                                                JULY 5, 2011
COMMONWEALTH OF VIRGINIA


                            UPON REHEARING EN BANC

            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                            Edward W. Hanson, Jr., Judge

        Samuel R. Brown, II, for appellant.

        John W. Blanton, Assistant Attorney General (Kenneth T. Cuccinelli,
        II, Attorney General, on brief), for appellee.


        Dennis Barson ("Barson") was convicted in the Circuit Court of the City of Virginia

Beach ("trial court") on one count of harassment by computer, in violation of Code

§ 18.2-152.7:1.[1]  Barson contends on appeal that the evidence presented at trial was insufficient

as a matter of law to support his conviction.  A divided panel of this Court agreed with Barson

and reversed his conviction.  See Barson v. Commonwealth, No. 2464-09-1 (Va. Ct. App.

_____

        [1] Code § 18.2-152.7:1 is contained in Title 18.2, Chapter 5 ("crimes against property"),
Article 7.1 ("computer crimes") and provides:

                If any person, with the intent to coerce, intimidate, or harass any
                person, shall use a computer or computer network to communicate
                obscene, vulgar, profane, lewd, lascivious, or indecent language, or
                make any suggestion or proposal of an obscene nature, or threaten
                any illegal or immoral act, he shall be guilty of a Class 1
                misdemeanor.

Nov. 2, 2010). We granted the Commonwealth's petition for rehearing *en banc* and stayed the mandate of the panel decision.[2] Upon rehearing *en banc,* we affirm the trial court.

## I. Background

Barson and his wife "A.B." had been married for eight years at the end of April 2009. At that time, Barson lived in Austin, Texas, while completing his medical subspecialty training in neurology, and A.B. lived in Virginia Beach with their children. On May 1, 2009, Barson received a phone call from a friend that alerted him to a "Craigslist" advertisement for sex. Barson visited the site and reviewed the posted advertisements. Upon seeing the advertisements, Barson became very angry and embarrassed and tried to call his wife. When his calls went unanswered, Barson began to send e-mail messages to A.B., her friends, and family members. Whenever a friend or family member responded to an e-mail, Barson forwarded the response to A.B. A.B. testified that she received eighty-seven e-mails between May 1, 2009 and May 14, 2009, and she received hundreds more over the span of the next six months.

The subject lines of the e-mails included phrases such as, "[A.B.] has sex with anonymous strangers on Craigs [sic] List Ads while husband lives in hotel working 3 jobs," "I wanted [D] and your cousins to know about your new hobby of soliciting sex on CL," and "Coke Whore Baby Killer Mom's Club Needs to Know." In the e-mails themselves, appellant wrote such things as "[You have] BORDERLINE PERSONALITY DISORDER look it up when you get off your knees from CL," and "I work my ass off and you suck off and fuck strangers on Craigs [sic] List," and "I told [M] . . . how you sucked off [D's] roommate 3 days in AZ . . . wanted to jump [D's] bones after 10 years killing your baby because it was a bother to you both and then picked [C] the coke dealer up at Rio fucked his brains out and vacuumed his baby to

---

[2] Neither party requested rehearing with respect to the panel's holding that venue for the conviction rested properly in the Virginia Beach Circuit Court. That issue is, therefore, not before this Court *en banc*.

death for an eight ball." The messages contained phrases such as, "my dad said you had a job . . . or blowjob? Which one do you get paid for and which is free? Not like you didn't suck off [J.L.] or looney [R] for an eightball!!!! If you didn't have crooked teeth and huge thighs you might be able to make money spreading your legs and sucking off Joe Pintos (strangers) [sic]." Appellant also sent a couple of messages from his cell phone along those same lines, alleging "STD['s] from risky gutter sex," and stating its "time to put your big girl pants on and get a job not take them off and give a blowjob."

On May 14, 2009, A.B. filed a criminal complaint for computer harassment in the General District Court for the City of Virginia Beach. On July 30, 2009, that court found Barson guilty as charged. Barson then appealed the matter to the trial court, which conducted a bench trial *de novo* on October 8, 2009. At trial, Barson testified that he sent the e-mails because he was angry, hurt, and embarrassed. He was also trying to "get a response" from A.B. Barson additionally testified he assumed that by forwarding the e-mails to her friends and family members, A.B. would be embarrassed.

Upon the conclusion of the evidence, the trial court found Barson guilty and imposed a fine of $250. When Barson asked the court to reconsider, the court responded, "No. He did it over and over and over again. It's disgusting. See the clerk."

## II. Analysis

Barson argues on appeal that the evidence presented at trial was insufficient as a matter of law to support his conviction for computer harassment. Barson concedes the language used in the e-mails he sent to his wife was "offensive and course," but, relying on our holding in Allman v. Commonwealth, 43 Va. App. 104, 596 S.E.2d 531 (2004), maintains the language contained in his e-mails does not meet the definition of "obscene" for purposes of his conviction under Code

- 3 -

§ 18.2-152.7:1. Barson also argues that in the event we reject his argument, due process

principles prevent affirmance of his conviction in light of his reliance on our holding in Allman.

## Standard of Review

When the sufficiency of the evidence is challenged on appeal, we view the evidence and

all reasonable inferences fairly deducible therefrom in the light most favorable to the party

prevailing below to determine whether the evidence presented at trial supports each and every

element of the offense charged. Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521

S.E.2d 777, 779 (1999). "[W]hen we consider the sufficiency of the evidence we do not consider

each piece of evidence in isolation. Instead, we review the totality of the evidence to determine

whether it was sufficient to prove an offense." Bowling v. Commonwealth, 51 Va. App. 102,

107, 654 S.E.2d 354, 356 (2007). "The judgment of the trial court is presumed to be correct and

will be reversed only upon a showing that it is plainly wrong or without evidence to support it."

Goble v. Commonwealth, 57 Va. App. 137, 153, 698 S.E.2d 931, 939 (2010) (citation omitted).

Thus, our review is limited to the narrow issue of whether "'any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v.

Virginia, 443 U.S. 307, 319 (1979)). That is,

> [i]n practical terms, a reviewing court does not ask itself whether *it*
> believes that the evidence at the trial established guilt beyond a
> reasonable doubt. . . . We ask only whether any rational trier of
> fact could have found the essential elements of the crime beyond a
> reasonable doubt. . . . This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence, and to draw reasonable
> inferences from basic facts to ultimate facts. . . . Thus, we do not
> substitute our judgment for that of the trier of fact even if our
> opinion were to differ.

Atkins v. Commonwealth, 57 Va. App. 2, 21, 698 S.E.2d 249, 258 (2010) (emphasis in original)

(internal quotations omitted).

Discussion

Barson focuses his argument on the single question of whether the evidence was sufficient to permit a reasonable fact finder to conclude that the content of Barson's e-mails contained "obscene, vulgar, profane, lewd, lascivious, or indecent language," or that he made "any suggestion or proposal of an obscene nature, or threaten[ed] any illegal or immoral act." Barson specifically argues that since the content of the e-mails in question does not meet the definition of "obscene," the evidence is insufficient as a matter of law to support his conviction for violating Code § 18.2-152.7:1.[3]

Although this issue has not previously been addressed by this Court with respect to this particular statute, there are several other statutes in the Code containing similar language prohibiting conduct or communications of a similar nature. Accordingly, any analysis of this issue must historically begin with Code § 18.1-238, the predecessor to current Code § 18.2-427. Code § 18.1-238 provided, "if any person shall curse or abuse anyone, or use vulgar, profane, threatening or indecent language over any telephone in this state, he shall be guilty of a misdemeanor." In Walker v. Dillard, 523 F.2d 3, 5 (4th Cir. 1975), the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") held that Code § 18.1-238, which "regulate[d] only speech" was unconstitutionally overbroad. Starting "from the proposition that the state has a legitimate interest in prohibiting obscene, threatening, and harassing phone calls, none of which are generally thought of as protected by the First Amendment," id. at 4, the Fourth Circuit found "nevertheless, [that] while such activity may permissibly be punished, the proscription must not be one that unduly impinges on protected expression." Id.

---

[3] Barson concedes that the sheer number and tenor of the e-mails was sufficient to establish the requisite intent to coerce, intimidate, or harass his wife. Indeed, proof of this element of the offense is necessary to elevate the mere boorish use of obscene or vulgar language to a criminal offense.

The Fourth Circuit found that while the language Mrs. Walker used over the telephone in that case might be "constitutionally prohibited under a *narrowly and precisely drawn* statute," id. at 4 (emphasis added), the words "vulgar," "profane," and "indecent" in the statute, standing alone, were unconstitutionally overbroad. The court specifically observed that such words are protected speech because they amount to "neither *obscenity* nor fighting words." Id. at 5 (emphasis added). The court then noted that words like "vulgar," "profane," and "indecent" are only ever permissibly prohibited as "obscene" when they have been used in conjunction with other, more specific adjectives like "obscene," "lewd," and "lascivious." Id. at 6.

In 1976, in response to Walker, the General Assembly amended Code § 18.1-238 and re-codified it as Code § 18.2-427. That code section now provides:

> Any person who uses obscene, vulgar, profane, lewd, lascivious, or indecent language, or makes any suggestion or proposal of an obscene nature, or threatens any illegal or immoral act with the intent to coerce, intimidate, or harass any person, over any telephone or citizens band radio, in this Commonwealth, is guilty of a Class 1 misdemeanor.

See 1976 Va. Acts ch. 312. See also 1984 Va. Acts ch. 592 (amending the statute to include use of such language over citizens band radio); 2010 Va. Acts ch. 565 (amending the verb tenses within the statute). This Court had its first opportunity to consider the constitutionality of the new statute in Perkins v. Commonwealth, 12 Va. App. 7, 402 S.E.2d 229 (1991). In that case, Clinton Perkins challenged, among other things, his conviction under Code § 18.2-427. Relying on Walker, Perkins argued that Code § 18.2-427, even as currently written, is unconstitutionally overbroad and vague. This Court disagreed, explaining

> An ordinance is overbroad if it deters constitutionally protected conduct. A challenge of overbreadth is based on the ground that legislation, even if lacking neither clarity nor precision, . . . offends the constitutional principle that a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.

- 6 -

Id. at 12, 402 S.E.2d at 232 (quotations omitted)). This Court further explained, "in view of the legislature's amendments to the statute following the decision in Walker . . . the legislature intended to address *harassing conduct* as the evil to be proscribed and intended to narrow the scope of the speech phrases to that which is *obscene*." Id. at 14, 402 S.E.2d at 233 (emphasis added). In affirming Perkins's conviction for violating Code § 18.2-427, this Court concluded, "this construction is not strained and removes protected speech from within the statute's sweep." Id.

Subsequently, in Allman v. Commonwealth, 43 Va. App. 104, 596 S.E.2d 531 (2004), Brian Allman challenged the sufficiency of the evidence supporting his conviction for violating Code § 18.2-427.[4] The evidence in that case proved that Allman left a six-minute message on an attorney's voice mail, referring to him as "a pussy" or "puss" 20 times, indicating his belief that the attorney was "squatting to pee" in "the ladies room" of his law firm, and alleging that the attorney needed to "(grow) a set of balls." Id. at 106-07, 596 S.E.2d at 532. Allman argued on appeal that the evidence was insufficient to prove his language was obscene or that he acted with the requisite intent. Because neither Code § 18.2-427, nor the chapter or article of the Code in which it appeared, contained a definition for the word "obscene," id. at 109, 596 S.E.2d at 534, this Court applied to Code § 18.2-427 the definition of "obscene" contained in Code § 18.2-372, which specifically provides,

> The word "obscene" where it appears *in this article* shall mean that which, considered as a whole, has as its dominant theme or purpose an appeal to the prurient interest in sex, that is, a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse, and which goes substantially beyond customary limits of candor in description or representation of such matters and which, taken as a

---

[4] We note that, as here, the constitutionality of the statute was not at issue in Allman. The sole issue was the sufficiency of the evidence.

- 7 -

whole, does not have serious literary, artistic, political or scientific value.

Code § 18.2-372 (emphasis added).

This statutory definition of *obscenity*, in actuality, mirrors the three-part *pornography* test promulgated in Miller v. California, 413 U.S. 15, 24 (1973), which enunciated the standard by which a statute prohibiting the distribution of pornographic materials might pass constitutional muster for purposes of the First Amendment. See Allman, 43 Va. App. at 110 n.3, 596 S.E.2d at 534 n.3. While the terms "obscene/obscenity" and "pornographic/pornography" are occasionally used interchangeably, they are not actually interchangeable. In fact, as the United States Supreme Court expressly noted, the Miller test applies, not to obscenity or obscene materials, but "more accurately*"* to "pornography" or "pornographic material." Miller, 413 U.S. at 18 n.2.

Applying the Miller "pornography" standard to the language used by Allman in his voice mail, this Court concluded that Allman's "repeated references to [the attorney] as a pussy, even taken in context, were, as a matter of law, insufficient to permit a reasonable trier of fact to conclude the references were obscene" under the definition set forth in Code § 18.2-372, Allman, 43 Va . App. at 111-12, 596 S.E.2d at 535, because the evidence "[did] not establish that the message, '*considered as a whole*,' either (1) *'[had] as its dominant theme . . .* an appeal to the prurient interest in sex, that is, a shameful or morbid interest in nudity, sexual content, . . . excretory functions or products thereof' or (2) *went 'substantially beyond the customary limits of candor* in description or representation of such matters,'" id. at 113, 596 S.E.2d at 535 (emphasis in original) (quoting Code § 18.2-372). Rather, this Court found that Allman's references to the attorney's purported "excretory functions or products thereof, though utterly tasteless and rude, merely served to emphasize [Allman's] belief in [the attorney's] cowardice," and his use of the word "pussy" was merely used to characterize the attorney as "a weak, cowardly or . . . effeminate man." Id. at 112, 596 S.E.2d at 535. Because Allman's language did not meet the

definition of obscenity contained in Code § 18.2-372, this Court found Allman did not violate Code § 18.2-427 and reversed his conviction. Id. at 113, 596 S.E.2d at 536.

Barson argues that, as in Allman, the language Barson used in his e-mails to A.B. does not meet the definition of obscenity set forth in Code § 18.2-372, because considered as a whole, it does not have "as its dominant theme or purpose an appeal to the prurient interest in sex" that "goes substantially beyond the customary limits of candor in description or representation of such matters." Barson reasons that because his language was merely "offensive and coarse" rather than "erotic," no reasonable fact finder could conclude it was obscene. Applying Allman, the panel majority agreed. However, we note that while "[p]ornographic material which is obscene [or erotic] forms a *sub-group* of all 'obscene' expression," it does not form "the whole, at least as the word 'obscene' is now used in our language." Miller, 413 U.S. at 18 n.2 (emphasis added). In fact, Code § 18.2-372 by its own terms limits the definition of the word "obscene" to Title 18.2, Chapter 8, Article 5, which addresses "crimes involving morals and decency" and "obscenity and related offenses." On its face, Code § 18.2-372 does not address crimes proscribing harassing conduct or speech.

Thus, notwithstanding the sweeping comment contained in Perkins, Allman's application of the definition for the word "obscene" contained in Code § 18.2-372 to other sections of the Code outside of that Article, such as Code § 18.2-427, resulted in a statute too "narrowly tailored" for its purpose. Indeed, since Allman, only communications which are essentially "pornographic" could ever be considered obscene for purposes of any statute prohibiting harassing conduct. Such a result clearly contravenes the stated intent of the legislature, found in the specific language of these statutes. In this case, Barson was convicted under Code § 18.2-152.7:1, which, unlike Code § 18.2-372, does not reference a statutory definition for the word "obscene." Setting Allman briefly aside, we note that in cases where no statutory

definition applies, courts *normally* assign a term its "'ordinary and usually accepted meaning

. . . .'" Williams v. Commonwealth, 50 Va. App. 337, 341, 649 S.E.2d 717, 719 (2007) (quoting

Woolfolk v. Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994)).  Moreover,

> [t]he language of a penal statute should be given a *reasonable* or *common sense* construction, consonant with the objects of the legislation. . . . Indeed, when determining the boundaries of such a statute, the plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction . . . .
>
> [T]his general rule applies except when the language of the statute is ambiguous or would lead to an absurd result. . . . In such an instance, the meaning of doubtful words in a statute may be determined by reference to their association with related words and phrases. . . . Thus, when general words and specific words are grouped together, the general words are limited and qualified by the specific words and will be construed to embrace only objects similar in nature to those objects identified by the specific words.

Williams v. Commonwealth, 50 Va. App. 337, 341-42, 649 S.E.2d 717, 719 (2007) (emphasis

added) (internal quotations and alterations omitted).  Put another way, "'a word is known by the

company it keeps.'"  Edwards v. Commonwealth, 53 Va. App. 402, 411, 672 S.E.2d 894, 898

(2009) (quoting S. D. Warren Co. v. Maine Bd. of Envtl. Prot., 547 U.S. 370, 378 (2006)).

"'[T]he meaning of a word takes color and expression from the purport of the entire phrase of

which it is a part, and it must be read in harmony with its context.'"  Id. (quoting Turner v.

Commonwealth, 226 Va. 456, 460, 309 S.E.2d 337, 339 (1983)).  To that end, "[w]e 'assume

that the legislature chose, with care, the words it used when it enacted the relevant statute.'"

Alger v. Commonwealth, 267 Va. 255, 261, 590 S.E.2d 563, 566 (2004) (quoting Barr v. Town

& Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)).

Code § 18.2-152.7:1 makes it a misdemeanor to "use a computer . . . to communicate

obscene, vulgar, profane, lewd, lascivious, or indecent language," when accompanied by a

specific intent to harass.  There is no dispute in this case that the evidence presented was

sufficient to show Barson intended to harass A.B.; Barson merely contends his language was not obscene.[5] We do not agree. As noted by the Supreme Court of the United States in Miller, "[d]erived from the Latin obscaenus, ob, to, plus caenum, filth, 'obscene' is defined in the Webster's Third New International Dictionary [1557 (3rd ed. 1993] as '1: disgusting to the senses . . . 2: offensive or revolting as countering or violating some ideal or principle.'" 413 U.S. at 18 n.2. This definition more accurately encompasses the type of communicative conduct proscribed by the statute, namely, that which is obscene, vulgar, profane, lewd, lascivious, or indecent. Thus, while Barson's language may or may not be "pornographic," utilizing the definition of the word "obscene" as commonly understood, a reasonable fact finder could certainly conclude that the language Barson used in his e-mails to A.B. is "obscene."

We, thus, hold that the application of the ordinary meaning of the word "obscene" to the conduct prohibited by Code § 18.2-152.7:1 is more consistent with the stated intent of the legislature than the *ad hoc* definition crafted in Allman. To the extent Allman requires that a different meaning of the word "obscene" be applied to the conduct prohibited in this case, we expressly overrule it.

Applying the appropriate standard of review and assigning the plain and ordinary meaning to the nature of the conduct prohibited by this statute, namely using a computer network to communicate obscene speech or threatening language with the specific intent to harass, we conclude the trial court did not err in finding the evidence sufficient to convict Barson of the

---

[5] While Barson's intent to harass A.B. is not at issue in this case, we note that the Commonwealth is required, in cases implicating harassment statutes of the type we have here, to prove the defendant communicated the prohibited language with the *specific "intent to coerce, intimidate, or harass any person."* Code § 18.2-152.7:1. Thus, since the Commonwealth must prove the presence of both harassing conduct *and* obscene speech in obtaining a conviction under the code sections implicated by this opinion, we note the actual reach of the statute is limited to the more narrow subset of harassing conduct which utilizes obscene speech. Perkins, 12 Va. App. at 14, 402 S.E.2d at 233.

offense for which he was charged. The messages Barson sent are replete with explicitly obscene accusations. The sheer number of messages sent, coupled with their content, adequately supports the trial court's finding that the evidence was sufficient to a support a conviction for computer harassment. We, thus, affirm.

Due Process

Barson also contends that if we overrule Allman, due process principles require that we apply any new rule prospectively, rather than retroactively. Relying on Bouie v. City of Columbia, 378 U.S. 347 (1964), Barson suggests this Court's adoption of a new definition for "obscenity" for purposes of Code § 18.2-152.7:1 would result in "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, [which] operates precisely like an *ex post facto* law," in violation of his due process rights. Id. at 353. Barson contends that even if this Court, in Allman, erred in applying the definition of obscenity contained in Code § 18.2-372 to criminal harassment statutes, at the time of his trial that was the state of the law, and any change in the law, therefore, should not be applied in his case. We hold that the Virginia Supreme Court's decision in Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 143 (2002) controls our disposition of this issue.

In Armstrong, the Virginia Supreme Court explained, "Bouie applies to changes in the interpretation of a criminal statute that are 'indefensible by reference to the law that had been expressed *prior to the conduct in issue*.'" Armstrong at 581, 562 S.E.2d at 143 (quoting Bouie, at 354) (emphasis in original). The principle expressed in Bouie applies when a court of last resort has altered the law in a manner that would operate to punish an individual for conduct not criminal at the time the conduct was engaged in. The criminalization of the conduct which resulted in Barson's conviction under Code § 18.2-152.7:1 predates this Court's decision in Allman, which dealt with a different criminal statute and, in any event, remained "subject to

- 12 -

review by [this Court] sitting *en banc* and [by] the [the Virginia Supreme Court] on appeal." <u>Id.</u> (citation omitted). Accordingly, our decision today does not impinge on Barson's due process rights. <u>See</u> <u>id.</u> at 581, 562 S.E.2d at 144.

III. <u>Conclusion</u>

For the foregoing reasons, we conclude that the trial court did not err in finding the evidence sufficient to convict Barson of violating Code § 18.2-152.7:1, and we further hold that principles of due process do not require that we relieve Barson from accountability under the statute.

<u>Affirmed.</u>

Elder, J., dissenting.

Without doubt, as the majority concludes, the record supports the trial court's finding that appellant acted with the requisite intent to harass his wife. In addition to proving this intent, however, the Commonwealth also was required to establish that appellant's language was "obscene" as that term is used in Code § 18.2-152.7:1. Contrary to the view of the majority, I would retain the definition of "obscene" set out in Allman v. Commonwealth, 43 Va. App. 104, 109-11, 596 S.E.2d 531, 534-35 (2004) (interpreting Code § 18.2-427), as the appropriate definition for use under Code § 18.2-152.7:1, as well. For the reasons set out in the panel majority opinion, I would conclude appellant's language here, like the language at issue in Allman, was "utterly tasteless and rude" but did not rise to the level of being "obscene." Allman, 43 Va. App. at 112, 596 S.E.2d at 535. Thus, I respectfully dissent.

# VIRGINIA:

*In the Court of Appeals of Virginia on*  **Tuesday**  *the*  **7th**  *day of*  **December, 2010**.

Dennis B. Barson, Jr.,                                                                                    Appellant,

 against                         Record No. 2464-09-1
                                   Circuit Court No. CR09003352-00

Commonwealth of Virginia,                                                                    Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On November 16, 2010 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on November 2, 2010, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on November 2, 2010 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35(b).  The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the appellee shall file twelve additional copies of the appendix previously filed in this case.  In addition, any party represented by counsel shall file twelve

electronic copies of their brief (and the appendix, if the party filing the appendix is represented by

counsel) with the clerk of this Court.  The electronic copies must be filed on twelve separate CDs or

DVDs and must be filed in Adobe Acrobat Portable Document Format (PDF).[1]



A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:    *original order signed by a deputy clerk of the*
       *Court of Appeals of Virginia at the direction*
       *of the Court*

Deputy Clerk

---

[1] The guidelines for the creation and submission of a digital brief package can be found at
www.courts.state.va.us, in the Court of Appeals section under "Resources and Reference Materials."

Present:   Judges Elder, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


DENNIS B. BARSON, JR.

v.        Record No. 2464-09-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE SAM W. COLEMAN III
NOVEMBER 2, 2010


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Edward W. Hanson, Jr., Judge

Samuel R. Brown, II, for appellant.

John W. Blanton, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


Dennis B. Barson appeals his conviction of harassment by computer in violation of Code

§ 18.2-152.7:1.  He argues that the trial court erred in finding that Virginia Beach was the proper

venue.  Barson also argues that the evidence was insufficient to prove the e-mails he sent were

obscene.  We disagree with Barson that Virginia Beach was not the proper venue, but agree with

him that the e-mails were not obscene.  Therefore, we reverse and dismiss.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).  So viewed, the evidence proved that over the span of six

months Barson sent hundreds of e-mails to Amanda Barson, his estranged wife, including

eighty-seven e-mails in the span of sixteen days.  Barson sent the e-mails to Ms. Barson's e-mail

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

account while she was living in Virginia Beach. Barson was living in Texas when he sent the e-mails.

According to Barson, as a result of a phone call on May 1, 2009, he visited "Craigslist," an online classified ad website, and reviewed posted advertisements. As a result of what he saw on the website, Barson testified that he became angry and embarrassed. When Ms. Barson failed to respond to his phone calls, he sent e-mails to her, her friends, and family members. When a friend or family member responded to an e-mail, Barson forwarded the response to Ms. Barson. The subject line of the e-mails included phrases such as, "Amanda Barson has sex with anonymous strangers on Craigs [sic] List Ads while husband lives in hotel working 3 jobs," "I wanted Deb and your cousins to know about your new hobby of soliciting sex on CL," and "Coke Whore Baby Killer Mom's Club Needs to Know." The e-mails alleged that Ms. Barson had a "personality disorder" and "suck[ed] and fuck[ed] strangers on Craigs [sic] List" while he "work[ed] his ass off." Barson also called her a "baby killing coke whore," accusing her of "vacuum[ing] his baby to death." Barson wrote that he told his mother "how you sucked off Dave's roommate 3 days in AZ," that Ms. Barson had "gutter sex with losers," that he could not "believe I married a coke whore baby killing prostitute," and that if she "didn't have crooked teeth and huge thighs [she] might be able to make money spreading [her] legs and sucking off Joe Pintos (strangers) [sic]." In one e-mail, Barson told Ms. Barson that she could be a "concubine" for a band she liked or the "guys she screwed" could pay her for what she "give[s] away for free." In the final e-mail admitted into evidence, Barson wrote that Ms. Barson needed to get a job and stop giving "blowjob[s]."

Barson testified at trial, admitting that he was angry when he sent the e-mails. Barson explained that he sent the e-mails to prompt Ms. Barson to respond to his allegations of adultery and explain her actions. Barson also admitted that he assumed by forwarding the e-mails to her friends and family members, she would be embarrassed.

Barson argues that the Commonwealth failed to prove venue was proper in Virginia Beach as provided by Code § 19.2-249.2. He contends that the evidence was insufficient to prove Ms. Barson's computer was located in Virginia Beach or that Virginia Beach was a place to which access to a computer for Barson's e-mails was made.

"When venue is challenged on appeal, we determine 'whether the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to support the [trial court's] venue findings.'" Morris v. Commonwealth, 51 Va. App. 459, 464-65, 658 S.E.2d 708, 710-11 (2008) (quoting Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990)). "To prove venue, the Commonwealth must 'produce evidence sufficient to give rise to a "strong presumption" that the offense was committed within the jurisdiction of the court, and this may be accomplished by either direct or circumstantial evidence.'" Foster-Zahid v. Commonwealth, 23 Va. App. 430, 442, 477 S.E.2d 759, 765 (1996) (quoting Cheng, 240 Va. at 36, 393 S.E.2d at 604), aff'd, 254 Va. 168, 489 S.E.2d 687 (1997).

Code § 19.2-249.2 provides:

> For the purpose of venue under the Virginia Computer Crimes Act (§ 18.2-152.1 et seq.), any violation of the article shall be considered to have been committed in any county or city:
>
> 1. In which any act was performed in furtherance of any course of conduct that violated this article;
>
> 2. In which the owner has his principal place of business in the Commonwealth;
>
> 3. In which any offender had control or possession of any proceeds of the violation or of any books, records, documents, property, financial instrument, computer software, computer program, computer data, or other material or objects that were used in furtherance of the violation;
>
> 4. From which, to which, or through which any access to a computer or computer network was made whether by wires, electromagnetic waves, microwaves, optics or any other means of communication;

5. In which the offender resides; or

6. In which any computer that is an object or an instrument of the violation is located at the time of the alleged offense.

The Commonwealth's evidence showed that Ms. Barson lived in Virginia Beach. Ms. Barson testified that all the offensive e-mails were "sent to [her] e-mail account here in the City of Virginia Beach." There was no evidence that Ms. Barson visited or lived outside of Virginia Beach during the time in question or that she accessed her e-mail outside of Virginia Beach. The evidence was sufficient to prove a "strong presumption" that Ms. Barson received the e-mails while she resided in Virginia Beach, on a computer located within Virginia Beach. Thus, the Commonwealth established venue under subsections 4 and 6 of Code § 19.2-249.2.

Barson argues that the evidence was insufficient to prove the e-mails were obscene because they demonstrated anger and did not have as their dominant theme an appeal to the prurient interest in sex.[1] "When faced with a challenge to the sufficiency of the evidence, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence' to support it." Crowder v. Commonwealth, 41 Va. App. 658, 662, 588 S.E.2d 384, 386 (2003) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). Therefore, we do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "'Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

---

[1] Barson does not challenge the trial court's determination that the e-mails were intended to "coerce, intimidate, or harass" Ms. Barson.

Code § 18.2-152.7:1 provides:

> If any person, with the intent to coerce, intimidate, or harass any
> person, shall use a computer or computer network to communicate
> obscene, vulgar, profane, lewd, lascivious, or indecent language, or
> make any suggestion or proposal of an obscene nature, or threaten
> any illegal or immoral act, he shall be guilty of a Class 1
> misdemeanor.

The evidence abundantly establishes Barson's intent to harass his estranged wife. At issue in this case is whether the statute's prohibition on obscene content encompasses the language contained in the e-mails.

This Court has interpreted the parallel language in Code § 18.2-427[2] as restricted to the definition of obscene, in order to avoid constitutional concerns. Allman v. Commonwealth, 43 Va. App. 104, 108-09, 596 S.E.2d 531, 533-34 (2004) (citing Walker v. Dillard, 523 F.2d 3 (4th Cir. 1975) (finding the predecessor to Code § 18.2-427 was facially overbroad)). We noted that Code § 18.2-427 did not define obscenity, but reasoned the Code of Virginia is one body of law and other sections may be referenced in which the same phraseology is used. On that basis, we adopted the definition of obscenity found in Code § 18.2-372. Allman, 43 Va. App. at 109, 596 S.E.2d at 534.

Material is obscene when it (1) "'has as its dominant theme or purpose an appeal to the prurient interest in sex, that is, a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse,'" (2) substantially exceeds "'the customary limits of candor in description or representation of such matters,'" and

---

[2] Code § 18.2-427 is similarly worded to Code § 18.2-152.7:1 and provides:

> Any person who uses obscene, vulgar, profane, lewd, lascivious, or
> indecent language, or makes any suggestion or proposal of an
> obscene nature, or threatens any illegal or immoral act with the
> intent to coerce, intimidate, or harass any person, over any
> telephone or citizens band radio, in this Commonwealth, is guilty
> of a Class 1 misdemeanor.

(3) "'taken as a whole, does not have serious literary, artistic, political or scientific value.'" Id. (quoting Code § 18.2-372). The first two prongs of the obscenity test codified in Code § 18.2-372 "involve 'primarily factual issues, to be measured by "contemporary community standards."'" Allman, 43 Va. App. at 111, 596 S.E.2d at 534-35 (quoting State v. Harrold, 593 N.W.2d 299, 312 (Neb. 1999)).

> However, "the [appellate] court . . . functions as a constitutional gatekeeper," by determining whether the speech "qualifies as possibly obscene . . . . In other words, the appellate court must make an independent review of the first two prongs, but the question to be asked is not whether the materials *are* obscene, but rather, whether the materials *create a jury issue* as to obscenity."

Id. at 111, 596 S.E.2d at 535 (quoting Harrold, 593 N.W.2d at 312) (alterations in original). "As to the third prong [which is not at issue here] . . . the appellate court should apply a *de novo* review . . . since this determination does not depend upon community standards.'" Id. (quoting Harrold, 593 N.W.2d at 313).

"Prurient" means "marked by or arousing an immoderate or unwholesome interest or desire; *esp.*: marked by, arousing, or appealing to sexual desire." Merriam-Webster's Collegiate Dictionary 1002 (11th ed. 2004). Prurient is "[c]haracterized by or arousing inordinate or unusual sexual desire." Black's Law Dictionary 1347 (9th ed. 2009). In making the factual determination as to the material's dominant theme or purpose, the "motivation in creating the sexually explicit material . . . [is] relevant to that element of the offense." Freeman v. Commonwealth, 223 Va. 301, 314, 388 S.E.2d 461, 468 (1982).

In Allman, the defendant was convicted of violating Code § 18.2-427 when he telephoned an attorney who had represented a party in a civil suit against him and referred to the attorney as a "pussy" twenty times over the course of a six-minute message. Allman, 43 Va. App. at 106, 596 S.E.2d at 532. The defendant stated that the attorney "must be 'squatting to pee' in 'the ladies room' '[be]cause [the attorney] is such a pussy.'" Id. at 112, 596 S.E.2d at

535. The defendant further stated his intention to send the attorney mail "to the attention of the ladies' room" at the law firm, because "I know that's where you hang out all the time, because you are such a big pussy." Id. The defendant said that the attorney should "'grow[] a set of balls." Id. We found that the defendant used this language to express his opinion of the attorney's cowardice and that the message did not establish as a dominate theme an appeal to the prurient interest in sex, or that it went beyond the customary limits of candor in description of such matters. Id. at 112-13, 596 S.E.2d at 535. Thus finding the language was not obscene, we reversed and dismissed the conviction. Id. at 113, 596 S.E.2d at 536; see also Lofgren v. Commonwealth, 55 Va. App. 116, 121, 684 S.E.2d 223, 226 (2009) (finding that the invectives "fucking cunt" and "fucking bitch" from a spurned suitor did not meet the definition of obscene).

Barson's e-mails to Ms. Barson unquestionably contained vulgar, offensive, and sexually explicit language. However, his use of these words "considered as a whole," and in the context of the marital discord and the angry, offensive tone and purpose of the e-mails, did not establish or support a factual or legal determination that Barson intended or had "as its dominant theme or purpose an appeal to the prurient interest in sex." The e-mails were not in any way intended to arouse or appeal to sexual desire, either Barson's own or any other individual's to whom he sent the e-mails. Rather, the evidence showed that Barson wrote the e-mails solely to convey his anger and disgust and that he forwarded them to his family and friends to embarrass Ms. Barson.[3] Under these circumstances, we hold, using the definition of obscene set forth in Code § 18.2-372 and the requisite standard of review, that the evidence was insufficient to permit a reasonable trier of fact to conclude the e-mails were obscene. The dissent seems to conclude that Barson's e-mails were prurient because he referenced his wife's alleged sexual

---

[3] The Commonwealth itself notes in brief that Barson used the explicit language to embarrass Ms. Barson.

conduct and the e-mails were "replete with 'sexual connotations.'"  Although the dissent reasons

that <u>Allman</u> is easily distinguishable from the facts of this case, it is difficult to perceive how the

dissent's analysis reconciles with <u>Allman</u>'s holding.  The defendant in <u>Allman</u> used numerous

references to excretory functions in a graphic, albeit metaphorical, manner.  The logic of the

dissent would seem to require the question in <u>Allman</u> of whether these references demonstrated a

shameful or morbid interest in excretory functions to be determined by the fact finder.  In

contrast, in <u>Allman</u> we found as a matter of law that the language at issue was not obscene.

Following <u>Allman</u>, we are compelled to likewise find here that the e-mails were not obscene as a

matter of law.

For these reasons, Barson's conviction for violating Code § 18.2-152.7:1 is reversed and

the charge is dismissed.

<u>Reversed and dismissed.</u>

Humphreys, J., concurring, in part, and dissenting, in part.

I concur in that part of the majority's opinion that holds the Commonwealth established venue in this case for Barson's violation of Code § 18.2-152.7:1, but I respectfully dissent from its holding that the evidence was insufficient as a matter of law to prove the e-mails that he sent to his wife were obscene. I dissent because I believe the majority not only ignores our standard of review, but also because I believe the majority misconstrues the statutory requirements for a finding of guilt under Code § 18.2-152.7:1.

Code § 18.2-152.7:1 provides

> If any person, with the intent to coerce, intimidate, or harass any person, shall use a computer or computer network to communicate obscene, vulgar, profane, lewd, lascivious, or indecent language, or make any suggestion or proposal of an obscene nature, or threaten any illegal or immoral act, he shall be guilty of a Class 1 misdemeanor.

Barson does not dispute that he sent the e-mails to harass his wife; thus, with respect to whether the evidence was sufficient as a matter of law, the only issue we need resolve is whether the e-mails and text messages which Barson sent to his wife, her friends, and family are "obscene, vulgar, profane, lewd, lascivious, or indecent."

As the majority correctly notes, in Allman v. Commonwealth, 43 Va. App. 104, 596 S.E.2d 531 (2004), this Court interpreted similar language found in Code § 18.2-427 as restricted to the definition of "obscene" in order to avoid constitutional concerns.[4] However, in Allman we

---

[4] In Walker v. Dillard, 523 F.2d 3 (4th Cir. 1975), the United States Court of Appeals for the Fourth Circuit held that Code § 18.2-238, the predecessor to Code § 18.2-427, was unconstitutionally overbroad. Code § 18.2-238 provided "if any person shall curse or abuse anyone, or use vulgar, profane, threatening or indecent language over any telephone in this state, he shall be guilty of a misdemeanor." The General Assembly subsequently amended Code § 18.2-238 to what is currently Code § 18.2-427, which provides that

> [a]ny person who uses obscene, vulgar, profane, lewd, lascivious, or indecent language, or makes any suggestion or proposal of an obscene nature, or threatens any illegal or immoral act with the

also found that in enacting Code § 18.2-427, "'the legislature [*both* (1)] intended to address harassing *conduct* as the evil to be proscribed and [(2)] intended to narrow the scope of the speech phrases to that which is obscene.'" Id. at 108, 596 S.E.2d at 533 (quoting Perkins v. Commonwealth, 12 Va. App. 7, 14-15, 402 S.E.2d 229, 233-34 (1991) (alterations in original)) (emphasis added). Although at the time Allman was written, this Court had already ascertained that Code § 18.2-427 is "neither unconstitutionally overbroad nor vague" as currently written, Perkins, 12 Va. App. at 16, 402 S.E.2d at 235, Allman narrowed the scope of the statute to encompass merely obscene language, purportedly in response to the Walker court's assertion that the state must place a "narrowing construction" on such sweeping language as that contained in former Code § 18.2-238. See Allman, 43 Va. App. at 109, 596 S.E.2d at 533 ("noting words 'vulgar,' 'profane' and 'indecent' are 'capable of overbroad interpretation' but that when used with 'more specific adjectives' like 'obscene,' 'lewd,' and 'lascivious,' rules of statutory construction allow the overbroad 'general words [to be] restricted to [meanings] that are analogous to the more specific words'" (quoting Walker, 523 F.2d at 5-6) (alterations in original)).

This Court, thus, borrowed the definition of "obscene" contained in Code § 18.2-372,[5] and applied it to Allman's repeated use of the words "puss" and "pussy" in a six-minute phone

intent to coerce, intimidate, or harass any person, over any telephone or citizens band radio, in this Commonwealth, is guilty of a Class 1 misdemeanor.

Code § 18.2-427, like Code § 18.2-152.7:1, is contained in Chapter 9 of Title 18.2, which addresses "crimes against peace and order."

[5] Chapter 8, Article 5 of Title 18.2 addresses "crimes involving morals and decency" and defines the word "obscene" as follows:

The word "obscene" where it appears in this article shall mean that which, considered as a whole, has as its dominant theme or purpose an appeal to the prurient interest in sex, that is, a shameful

message left on an attorney's answering machine. We noted in <u>Allman</u> that the first two prongs of the obscenity test codified in Code § 18.2-372 "involve 'primarily factual issues, to be measured by "contemporary community standards,"'" <u>id.</u> at 111, 596 S.E.2d at 534-35 (quoting <u>State v. Harrold</u>, 593 N.W.2d 299, 312 (Neb. 1999)), and held that "'the question to be asked is not whether the materials *are* obscene, but, rather, whether the materials *create a jury issue* as to obscenity.'" <u>Id.</u> at 111, 596 S.E.2d at 535 (quoting <u>Harrold</u>, 593 N.W.2d at 312) (emphasis in original). We also said "'to be obscene, conduct must violate contemporary community standards of sexual candor,' and that 'expert testimony regarding community standards is not required[;] the fact finder may apply his or her knowledge in ascertaining the acceptable standard in the community.'" <u>Id.</u> at 109-10, 596 S.E.2d at 534 (quoting <u>Copeland v. Commonwealth</u>, 31 Va. App. 512, 515, 525 S.E.2d 9, 10 (2000)) (alteration in original). Because the third prong of the test "does not depend upon community standards," we apply a *de novo* standard of review on that prong. <u>Id.</u> at 111, 596 S.E.2d at 535 (citing <u>Harrold</u>, 593 N.W.2d at 313).[6]

On the facts contained in <u>Allman</u>, we ultimately concluded that "[u]nder any 'contemporary community standards of sexual candor,' Allman's words, 'considered as a whole,' did not appeal to the prurient interest in sex or go 'substantially beyond the customary limits of candor in [the] description or representation of such matters.'" <u>Id.</u> at 112, 596 S.E.2d at 535 (quoting Code § 18.2-372). Although we defined the word "pussy" as "vulgar slang" for

or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse, and which goes substantially beyond customary limits of candor in description or representation of such matters and which, taken as a whole, does not have serious literary, artistic, political or scientific value.

Code § 18.2-372.

[6] As correctly noted by the majority, Barson does not dispute that the e-mails he sent to his wife do not have any serious literary, artistic, political or scientific value.

"either (1) the female genitals or (2) sexual intercourse," we held that they were not obscene in Allman because, in context, they were merely used to characterize the recipient of the phone call as "a weak, cowardly or . . . effeminate man." Id. In other words, the "utterly tasteless and rude" comments uttered by Allman did not meet the definition of obscenity because Allman's "use of the word 'pussy,' never made any reference to a sexual act" and had "no sexual connotations attached to it." Id. Because his words were not obscene, we did not decide whether Allman intended to harass the attorney by leaving the offensive voice message.

This Court again addressed the issue of criminally obscene language in Lofgren v. Commonwealth, 55 Va. App. 116, 684 S.E.2d 223 (2009). In Lofgren, the victim testified that after an altercation with her then boyfriend, Jon Lofgren, he telephoned her and said, "I can't believe you fucking cunt. . . . You're a fucking bitch. . . . I hate you. . . . I can't believe you're doing this. [W]e had plans." Id. at 118, 684 S.E.2d at 224. The victim went to the magistrate and swore out an arrest warrant, and upon her return home she discovered a voice mail message in which Lofgren called her a "fucking cunt" and said, "you fucking suck." Id. Lofgren was later convicted of violating Code § 18.2-472, and appealed his conviction to this Court.

This Court reversed, finding that Lofgren's "use of the phrases 'fucking cunt' and 'fucking bitch' was insufficient to permit a reasonable trier of fact to conclude the references were obscene." Id. at 121, 684 S.E.2d at 226. This Court defined the word "fuck" as "to engage in coitus with – sometimes used interjectionally with an object (as a personal or reflexive pronoun) *to express anger, contempt, or disgust*" or "to deal with unfairly or harshly." Id. at 121, 684 S.E.2d at 225 (emphasis in original). We also defined the word "cunt" as "the female genital organ" or "sexual intercourse with a woman." Id. A bitch was defined as "a female dog" or "a malicious, spiteful, or overbearing woman—sometimes used as generalized term of abuse." Id. We opined that,

> [a]lthough the words "fucking" and "cunt" can have sexual connotations when utilized in certain contexts, appellant's use of these words "considered as a whole" and in the context in which they were spoken, did not establish that the communication had "as its dominant theme or purpose an appeal to the prurient interest in sex . . . [or] w[ent] substantially beyond the customary limits of candor in description or representation of such matters." Code § 18.2-372. Rather . . . [Lofgren] used the offensive words as vulgar curse or swear words to communicate his frustration, anger, contempt or disgust with the victim after the incident.

Id. at 121, 684 S.E.2d at 226. Accordingly, we concluded that Lofgren's language "failed to meet the definition of obscene as required by Allman and Code § 18.2-372." Id. at 122, 684 S.E.2d at 226. Again, because the language was not obscene, we did not consider whether Lofgren acted with the requisite intent "to coerce, intimidate, or harass" his victim. Id.

The instant case is readily distinguishable from Allman and Lofgren. Unlike the language used in those cases to harass the unwilling recipients, I believe a reasonable fact finder could conclude, as it did here, that the eighty-seven e-mails Barson sent to his wife between May 1, 2009, and May 14, 2009, contained language of such a graphic and explicit sexual nature as to manifest a "shameful or morbid" interest in his wife's sexual conduct, or in other words, a prurient interest in sex that "substantially exceeds the customary limits of candor in description or representation of such matters." Code § 18.2-372. Unlike in Allman, Barson's correspondence made repeated references to his wife's "sexual acts" and were replete with "sexual connotations." See Allman, 43 Va. App. at 112, 596 S.E.2d at 535.

Indeed, in the e-mails, Barson wrote such things as "[You have] BORDERLINE PERSONALITY DISORDER look it up when you *get off your knees* from CL ["Craigslist"]," "I work my ass off and you *suck off* and *fuck strangers* on Craigs List [sic]," and "I told Mon . . . how you *sucked off* Dave's roommate 3 days in AZ . . . wanted to jump Dave's bones after 10 years killing your baby because it was a bother to you both and then picked Cameron the coke dealer up at Rio *fucked his brains out* and vacuumed his baby to death for an eight ball."

- 13 -

(Emphasis added). The messages were both voluminous and replete with phrases describing sexual acts such as, "my dad said you had a job . . . *or blowjob*? Which one do you get paid for and which is free? Not like you didn't *suck off* Jimmy Lawler or looney Rooney for an eightball!!!! If you didn't have crooked teeth and huge thighs you might be able to make money *spreading your legs and sucking off* Joe Pintos (strangers) [sic]." Appellant also sent a couple of text messages from his cell phone, alleging "STD['s] from risky gutter sex," and stating its "time to put your big girl pants on and get a job not take them off and *give a blowjob*." The trial court found such language was "sick," and in convicting Barson, inferentially found as a fact that the messages when "considered as a whole, has as [their] dominant theme or purpose an appeal to the prurient interest in sex, . . . and which goes substantially beyond customary limits of candor in description or representation of such matters and which, taken as a whole, does not have serious literary, artistic, political or scientific value."

The majority seems to think the definition of "obscene" requires a finding on the record that the individual doing the harassing is himself sexually excited by the nature of the language or conduct he is using to harass another. I do not believe <u>Allman</u> stands for this proposition. If it does, virtually nothing will meet the definition of "obscenity" for purposes of these criminal statutes. A statute should never be interpreted so as to lead to such absurd results. <u>Commonwealth v. Doe</u>, 278 Va. 223, 230, 682 S.E.2d 906, 908-09 (2009). Moreover, "[i]t is a necessary concomitant of the doctrine of *stare decisis* that a precedent is not always expanded to the limit of its logic." <u>Hein v. Freedom from Religion Found., Inc.</u>, 551 U.S. 587, 615 (2007). While the majority correctly notes that the "motivation in creating the sexually explicit material . . . is *relevant* to" the definition of "obscenity," <u>Freeman v. Commonwealth</u>, 223 Va. 301, 314, 388 S.E.2d 461, 468 (1982), I fail to see anywhere in the <u>Allman</u> analysis where it is *dispositive* of the inquiry. Indeed, in <u>Allman</u> we noted that the harassing *conduct* is the evil to be

- 14 -

proscribed, *along with* the obscene *nature* of the language used to engage in that conduct. Allman, 43 Va. App. at 108, 596 S.E.2d at 533.

More importantly, we said in Allman that whether or not language used to harass meets the definition of obscenity for purposes of these criminal harassment statutes is a *factual* inquiry, to be measured by contemporary community standards as determined by the *fact finder*. Id. at 110-11, 596 S.E.2d at 534-35. In this case, although the majority correctly states our standard of review, it fails to follow it. We said in Allman that Allman's use of the words "puss" and "pussy" could not create a jury question as to its characterization as obscenity. I agree. However, I believe the language utilized by Barson in these e-mails to harass his wife *does* create such a jury issue because, as a whole, they clearly have as their dominant theme or purpose a shameful and morbid interest in his wife's sexual conduct that goes beyond customary limits of candor in describing or representing those matters. Barson repeatedly and unceasingly makes reference to his wife's sexual behavior, i.e. her "fucking and sucking off" men whom she meets on Craigslist, the spreading of her legs, and the blowjobs she apparently gives strangers. It was simply within the fact finder's purview to render a decision on the obscene nature of the correspondence. The trial court, as the fact finder, considered the language used in the e-mails, in light of its own community standards, and concluded that the statements made by Barson to his wife were obscene. Unlike the majority, I do not find that factual determination to be plainly wrong or without evidence to support it. In fact, if the graphic content of these e-mails does not meet the definition of "obscenity" as applied to these criminal harassment statutes, I am hard-pressed to conceive of any that could and this statute, for all practical purposes, has today been rendered a nullity.

Unlike in Allman and Lofgren, Barson's e-mails go beyond mere name-calling. Instead, they manifest a morbid or shameful interest in his wife's purported sexual conduct, make

continuous references to the sexual act, and carry substantial sexual connotations.  Barson's wife received eighty-seven of these e-mails over fourteen short days.  The trial court reviewed the e-mails and expressly found they were "sick" and, at least implicitly, concluded that they went "substantially beyond the customary limits of candor in description or representation of such matters."  Although Barson's reason for sending these harassing e-mails - anger and disgust - is relevant to the analysis, it is not dispositive of the issue.  In short, the e-mails Barson sent to his wife far exceeded the "utterly tasteless and rude" language of <u>Allman</u>, or the mere vulgar curse or swear words used to communicate frustration, anger, contempt, or disgust in <u>Lofgren</u>.  The trial court, thus, did not err in concluding that the e-mails Barson sent to his wife, which he also sent to her friends and family members, were obscene and that he intended to harass her with them.

Because I would find that the evidence presented at trial was sufficient to find Barson guilty of using a computer to communicate obscene language to his wife and others with the intent to coerce, intimidate, or harass her, I would affirm Barson's conviction for violating Code § 18.2-152.7:1.