COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


BRIAN ALLMAN, S/K/A
 BRIAN P. ALLMAN
                                                         OPINION BY
v.        Record No. 0664-03-2              JUDGE LARRY G. ELDER
                                                         MAY 25, 2004
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Beverly W. Snukals, Judge

            Brian P. Allman, *pro se.*

            John H. McLees, Senior Assistant Attorney General (Jerry W.
            Kilgore, Attorney General, on brief), for appellee.


        Brian P. Allman (appellant) appeals from his bench trial conviction for making an

obscene telephone call with an intent to coerce, intimidate or harass in violation of Code

§ 18.2-427.  On appeal, he contends the evidence was insufficient to prove his language was

obscene or that he acted with the requisite intent.[1]  We hold the evidence, viewed in the light

most favorable to the Commonwealth, was insufficient to prove his language was obscene.

Thus, we reverse and dismiss his conviction without considering whether he acted with an intent

to harass.

---

    [1] Appellant included nine assignments of error.  However, the only issues contained in
those assignments of error relate to the sufficiency of the evidence to prove that the language he
used and the intent with which he acted fell within the proscriptions of the statute.

BACKGROUND

At the time of the events upon which the instant charges are based, appellant operated a small trash company in Fairfax County. One of appellant's competitors was a company called Triple A Trash, operated by Republic Services Incorporated (Republic). As part of appellant's advertising, he "target[ed] [Republic] as [a] competitor" and described Republic's fees as a "rip off."

Appellant filed a civil action against Republic in the Fairfax County Circuit Court. Republic was represented in that action by Richmond attorney Douglas Nabhan. Nabhan filed a demurrer on Republic's behalf. Appellant contacted Nabhan seeking Nabhan's agreement to allow appellant to amend his motion for judgment to correct the defect challenged by the demurrer. By letter faxed to appellant on October 15, 2002, Nabhan refused to agree to appellant's request, indicating his client preferred to allow the court to rule on the demurrer.

On October 25, an associate from the Fairfax office of Nabhan's law firm appeared in court to argue the demurrer. Appellant had "expect[ed] Mr. Nabhan to come argue the motion as to the demurrer." The court sustained the demurrer without leave to amend, and appellant noted an appeal to the Supreme Court that same day.

On October 28, 2002, appellant telephoned Nabhan at his office and left a message on Nabhan's voice mail. The message contained numerous unflattering characterizations of Nabhan, referring to him as "a pussy" or "puss" twenty times, and lasted approximately six minutes. Appellant's repeated use of the word, "pussy," included references to female excretory functions. Appellant indicated his belief that Nabhan must be "squatting to pee" in "the ladies room" of his law firm "[be]cause [appellant believed Nabhan] is such a pussy." Appellant indicated he would send Nabhan's copy of his notice of appeal to the attention of the ladies'

room at Nabhan's firm because "I know that's where you hang out all the time, because you are such a big pussy." Appellant said Nabhan should become more masculine and courageous by "grow[ing] a set of balls" and said that, even if Nabhan "[grew] a set of balls," left the ladies' room, and "start[ed] lifting weights," Nabhan would still need twelve to twenty other attorneys to accompany him to oral argument before the Supreme Court.

Appellant was charged and tried for the instant offense. Testifying in his own behalf, appellant claimed his intent in calling Nabhan was merely "to notify [Nabhan] that [appellant] had filed [his] appeal with the Supreme Court of Virginia." He admitted leaving the message he did was "an error in . . . judgment" and that he "probably should have been a little more gentlemanly." Appellant said he chose the words that he did because he "just really wanted [Nabhan] to know what I thought of him. I thought he was a sissy. I didn't appreciate the way things had taken place so far in the litigation. He doesn't like me and I don't like him." Appellant conceded that he could have informed Nabhan he had noted an appeal of the dismissal of the suit in seven or fewer sentences in a message lasting ten to twenty seconds.

The court convicted appellant of the charged offense, reasoning in relevant part as follows: "I don't know whether [the language] is obscene, vulgar, profane, or lewd, but I believe the use of the words in conjunction with the male anatomy along with the references to the bathroom, and all the context that it's used in certainly fits within the definition of those terms."

Appellant noted this appeal.

## II.

## ANALYSIS

Code § 18.2-427 provides in relevant part as follows:

> *Use of profane, threatening or indecent language over public airways*

> If any person shall use obscene, vulgar, profane, lewd, lascivious, or indecent language, or make any suggestion or proposal of an obscene nature, or threaten any illegal or immoral act with the intent to coerce, intimidate, or harass any person, over any telephone or citizens band radio, in this Commonwealth, he shall be guilty of a Class 1 misdemeanor.

Code § 18.1-238 was the predecessor to Code § 18.2-427. Code § 18.1-238 provided that "If any person shall curse or abuse anyone, or use vulgar, profane, threatening or indecent language over any telephone in this state, he shall be guilty of a misdemeanor." In Walker v. Dillard, 523 F.2d 3 (4th Cir. 1975), the Fourth Circuit Court of Appeals held Code § 18.1-238 was facially overbroad. Thereafter, the legislature amended the statute to include its present language. See 1976 Va. Acts ch. 312 (recodifying statute at § 18.2-427); see also 1984 Va. Acts ch. 592 (amending statute to include use of such language over citizens band radio).

In Perkins v. Commonwealth, 12 Va. App. 7, 14-15, 402 S.E.2d 229, 233-34 (1991), we considered a claim that the amended statute, codified at § 18.2-427, was unconstitutionally overbroad. In order to avoid such a finding, we interpreted "the phrase, 'with the intent to coerce, intimidate, or harass' as applying to the use of 'obscene, vulgar, profane, lewd, lascivious, or indecent language.'" Id. at 14, 402 S.E.2d at 233. We also concluded, "[i]n view of the legislature's amendments to the statute following the decision in Walker, that the legislature [both (1)] intended to address harassing conduct as the evil to be proscribed and [(2)] intended to narrow the scope of the speech phrases to that which is obscene."[2] Id.; see also Walker, 523 F.2d at 5-6 (noting words "vulgar," "profane" and "indecent" are "capable of

---

[2] Perkins involved a threat, *inter alia*, to "blow [someone's] fucking head off," rape his wife, kill him and his wife, "and then burn [his] fucking house down." 12 Va. App. at 11, 402 S.E.2d at 231. On appeal to this Court, Perkins contended only that Code § 18.2-427 was unconstitutionally vague and overbroad. Id. at 10, 402 S.E.2d at 231. He argued it was (1) unconstitutionally overbroad because (a) it does not require any criminal *mens rea* and (b) criminalizes a threat to destroy even one's own property and (2) unconstitutionally vague because "it is uncertain . . . exactly what conduct is prohibited." Id. at 15-16, 402 S.E.2d at 234. Perkins never argued *his own language and behavior* did not fall within the proscriptions of the

overbroad interpretation" but that when used with "more specific adjectives" like "obscene," "lewd," and "lascivious," rules of statutory construction allow the overbroad "general words [to be] restricted to [meanings] that are analogous to the more specific words").

Neither Code § 18.2-427 nor the chapter or article in which it appears--Chapter 8, Article 5, of Title 18.2--contains a definition of the word "obscene." However, in interpreting a statute, ""'[t]he Code of Virginia constitutes a single body of law, and other sections can be looked to where the same phraseology is employed.'"" Moyer v. Commonwealth, 33 Va. App. 8, 35, 531 S.E.2d 580, 593 (2000) (*en banc*) (quoting Hart v. Commonwealth, 18 Va. App. 77, 79, 441 S.E.2d 706, 707 (1994) (quoting King v. Commonwealth, 2 Va. App. 708, 710, 347 S.E.2d 530, 531 (1986))).

Code § 18.2-372--contained in a different chapter of Title 18.2--defines the word, "obscene," as

> that [1] which, considered as a whole, has as its dominant theme or purpose an appeal to the prurient interest in sex, that is, a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse, and [2] which goes substantially beyond the customary limits of candor in description or representation of such matters and [3] which, taken as a whole, does not have serious literary, artistic, political or scientific value.

"To be obscene, conduct must violate contemporary community standards of sexual candor." Copeland v. Commonwealth, 31 Va. App. 512, 515, 525 S.E.2d 9, 10 (2000); see also Miller v. California, 413 U.S. 15, 24, 93 S. Ct. 2607, 2610, 37 L. Ed. 2d 419 (1973).[3] As the Virginia

---

statute, and we, appropriately, never addressed that question in the appeal. Further, we note Code § 18.2-427 proscribes not only "us[ing] obscene" language with an "intent to coerce, intimidate, or harass," but also "threaten[ing] any illegal . . . act" with the same intent.

[3] Virginia's statutory standard, coupled with the judicial requirement that conduct must violate contemporary community standards, parallels the standard the Supreme Court enunciated in Miller as passing muster under the First Amendment:

Supreme Court has noted, "[i]t would be difficult, if not impossible, . . . to formulate a statewide standard of obscenity, for our state comprises communities with a vast diversity of life styles. Materials which do not offend the community standards of our metropolitan areas might well be regarded as obscene by the standards of some of our rural communities." Price v. Commonwealth, 214 Va. 490, 492, 201 S.E.2d 798, 799 (1974). "[E]xpert testimony regarding community standards is not required[;] the fact finder may apply his or her knowledge in ascertaining the acceptable standard in the community." Copeland, 31 Va. App. at 515, 525 S.E.2d at 10.

On appeal, we "must make an independent determination of the constitutional issue of obscenity, which is a mixed question of law and fact." Price v. Commonwealth, 213 Va. 113, 118, 189 S.E.2d 324, 328 (1972), vacated on other grounds and remanded by 413 U.S. 912, 93 S. Ct. 3049, 37 L. Ed. 2d 1031 (1973); see also Price, 214 Va. at 491, 201 S.E.2d at 799 (on appeal after remand, adhering to prior decision to extent not vacated by United States Supreme Court and holding that "only new questions now presented . . . are whether Code § 18.1-230 is unconstitutionally vague or overbroad in light of the new test of obscenity promulgated in Miller"); State v. Harrold, 593 N.W.2d 299, 310 (Neb. 1999) ("acknowledg[ing] that the

---

(a) whether "'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest";

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

413 U.S. at 24, 93 S. Ct. at 2610 (quoting Kois v. Wisc., 408 U.S. 229, 230, 92 S. Ct. 2245, 2246, 33 L. Ed. 2d 312 (1972) (quoting Roth v. United States, 354 U.S. 476, 489, 77 S. Ct. 1304, 1311, 1 L. Ed. 2d 1498 (1957))).

- 6 -

question of the proper role of an appellate court in obscenity cases is one which has engendered a variety of opinions" and extracting a "middle-ground" approach from United States Supreme Court cases).

The first two prongs of the Miller obscenity test, as codified by Code § 18.2-372--whether the material, (1) "considered as a whole, has as its dominant theme or purpose an appeal to the prurient interest in sex, that is, a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse" and (2) "goes substantially beyond the customary limits of candor in description or representation of such matters"--involve "primarily factual issues, to be measured by 'contemporary community standards.'" Harrold, 593 N.W.2d at 312. However, "the [appellate] court . . . functions as a constitutional gatekeeper," by determining whether the speech "qualifies as possibly obscene. . . . In other words, the appellate court must make an independent review of the first two prongs, but the question to be asked is not whether the materials *are* obscene, but, rather, whether the materials *create a jury issue* as to obscenity." Id. (citing Smith v. United States, 431 U.S. 291, 305-06, 97 S. Ct. 1756, 1766, 52 L. Ed. 2d 324 (1977); Jenkins v. Georgia, 418 U.S. 153, 159-60, 94 S. Ct. 2750, 2754-55, 41 L. Ed. 2d 642 (1974)) (emphases added); Jenkins, 418 U.S. at 161, 97 S. Ct. at 2755 (noting "[i]t would be wholly at odds with . . . Miller to uphold an obscenity conviction based upon a defendant's depiction of a woman with a bare midriff, even though a properly charged jury unanimously agreed on a verdict of guilty"). As to the third prong--whether the material "taken as a whole, . . . [has] serious literary, artistic, political or scientific value," Code § 18.2-372--"the appellate court should apply a *de novo* review . . . since this determination does not depend upon community standards." Harrold, 593 N.W.2d at 313 (citing Pope v. Illinois, 481 U.S. 497, 107 S. Ct. 1918, 95 L. Ed. 2d 439 (1987)).

We hold that appellant's repeated references to Nabhan as a pussy, even taken in context, were, as a matter of law, insufficient to permit a reasonable trier of fact to conclude the references were obscene. Under any "contemporary community standards of sexual candor," the statement, "considered as a whole," neither (1) "ha[d] as its dominant theme or purpose an appeal to the prurient interest in sex, that is, a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse," nor(2) "[went] substantially beyond the customary limits of candor in description or representation of such matters." Code § 18.2-372.

The word, "pussy," is defined by Webster's Unabridged Dictionary as *"vulg[ar] slang"* for either (1) the female genitals or (2) sexual intercourse. Random House Webster's Unabridged Dictionary 1571 (2d ed. 1998); see also Webster's Third New International Dictionary 1849 (1981). However, as appellant argues, appellant used the word "pussy" in the context of his voice mail message to Nabhan merely to characterize Nabhan as "a weak, cowardly or . . . effeminate man." Appellant's use of the word, "pussy," "never made any reference to a sexual act" and had "no sexual connotations attached to it."

It is true that appellant's repeated use of the word "pussy" included references to female excretory functions. Appellant indicated his belief that Nabhan must be "squatting to pee" in "the ladies room" "[be]cause [appellant believed Nabhan] is such a pussy." Appellant indicated he would send Nabhan's copy of his notice of appeal to the attention of the ladies' room at Nabhan's firm because "I know that's where you hang out all the time, because you are such a big pussy." Appellant said Nabhan should become more masculine and courageous by "grow[ing] a set of balls" and said that, even if Nabhan "[grew] a set of balls," left the ladies' room, and "start[ed] lifting weights," Nabhan would still need twelve to twenty other attorneys to accompany him to oral argument before the Supreme Court. These references to "excretory

functions or products thereof," though utterly tasteless and rude, merely served to emphasize appellant's belief in Nabhan's cowardice.  Cf. Yeagle v. Collegiate Times, 255 Va. 293, 297, 497 S.E.2d 136, 138 (1998) (in suit claiming common law defamation, holding as a matter of law that "phrase 'Director of Butt Licking'" is "disgusting, offensive, and in extremely bad taste" but is "no more than 'rhetorical hyperbole'" and "cannot reasonably be understood as stating an actual fact about Yeagle's job title or her conduct, or that she committed a crime of moral turpitude").  They do not establish that the message, "*considered as a whole*," either (1) "*[had] as its dominant theme* . . . an appeal to the prurient interest in sex, that is, a shameful or morbid interest in nudity, sexual conduct, . . . excretory functions or products thereof" or (2) *went "substantially beyond the customary limits of candor* in description or representation of such matters."  Code § 18.2-372 (emphases added).

III.

Thus, we hold as a matter of law that appellant's language was not obscene.  Because the language was not obscene, it did not violate the statute, and we need not consider whether appellant acted with the intent "to coerce, intimidate, or harass."  For these reasons, we reverse appellant's conviction and dismiss the warrant.

<u>Reversed and dismissed.</u>