UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Frank and Alston
Argued by teleconference

LISA ALEXANDER

MEMORANDUM OPINION[*] BY
v.    Record No. 0126-12-4    JUDGE ROBERT P. FRANK
APRIL 30, 2013

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Sarah L. Deneke, Judge

G. Price Koch (Spencer, Mayoras, Koch & Cornick, PLC, on brief),
for appellant.

Aaron J. Campbell, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Lisa Alexander, appellant, was convicted, by a jury, of assault and battery, in violation of

Code § 18.2-57[1]; interfering with a 911 phone call, in violation of Code § 18.2-164; and two

counts of making threatening/obscene phone calls in violation of Code § 18.2-427. On appeal,

she challenges the sufficiency of the evidence. For the reasons stated, we affirm in part and

reverse in part.

BACKGROUND

The facts are not controverted. Appellant's husband, Martinez Alexander (husband), was

temporarily living with W.F. and M.F. because he and appellant were having marital trouble

arising from appellant's son's legal problems.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant's appeal of the assault and battery conviction was denied at the petition stage and is not before us.

On August 12, 2010, husband went to the marital residence to retrieve his clothing. During an argument, appellant threw a drinking glass at husband, shattering it against husband's head. The injury resulted in blood flowing from husband's head and into his eyes.

Husband called 911 with his cell phone. Appellant told him not to call 911 and attempted to take the phone from husband's hand. Husband was able to give the 911 dispatcher his home address and phone number and ask for an ambulance. Husband yelled "send the police" as appellant grabbed the phone and left the residence. The line remained open for 44 minutes. During this time, the 911 dispatcher attempted to communicate with husband but was unable to do so. Emergency responders arrived shortly after the 911 call.

Husband obtained a protective order, resulting in appellant and her daughter being evicted from her residence. Appellant blamed W.F. and M.F. for husband's obtaining the protective order and for interfering with her relationship with her husband.

After being evicted, appellant left two voicemail messages directed at W.F. and M.F. and their thirteen-year-old daughter, A.

Both messages were replete with cursing and contained extensive and graphic name calling. The messages repeatedly accused W.F. and M.F. and their thirteen-year-old daughter, A., of engaging in sexual acts. Additionally, appellant accused W.F. of ruining her life and warned him to leave her child alone. Appellant expressed anger that W.F. and M.F. betrayed their friendship. Appellant admonished W.F. and M.F. to leave her alone.

Among the statements contained in the voicemails were the following (not edited for spelling or grammar), on which the Commonwealth relied to demonstrate appellant's alleged threats:

> 1. You know what, you little fucking punk, you're a fucking punk ass bitch mother fucker, ok?

2. Y'all gonna get every mother fucking thing that's coming back to you because karma is a fucking bitch.

3. Y'all are going to fucking hell with gasoline drawers on.

4. Check your mother fucking selves because you done fucking crossed the line . . . .

5. All y'all mother fuckers going down with me because I'm telling it all, everything mother fucking thing I know . . . .

6. Y'all gonna meet fucking ghetto because guess what, it's all going down. You're going down, she's going down, all the mother fucking truth coming out.

7. Now, you answer the mother fucking phone, you be a mother fucking man but you ain't a man you're a fucking bitch, just like Al was a fucking bitch, and your wife is a fucking bitch . . . .[2]

This appeal follows.

## ANALYSIS

### I. Obscene/threatening phone calls

Code § 18.2-427 states in part:

> Any person who uses obscene, vulgar, profane, lewd, lascivious, or indecent language, or makes any suggestion or proposal of an obscene nature, or threatens any illegal or immoral act with the intent to coerce, intimidate, or harass any person, over any telephone or citizens band radio, in this Commonwealth is guilty of a Class 1 misdemeanor.[3,4]

---

[2] In our analysis, we will refer to these statements by number.

[3] Appellant does not challenge the intent component of the statute.

[4] This statute states three offenses in the disjunctive. The Supreme Court of Virginia has noted that the first two offenses "are qualified by the word 'obscene,'" but the third, prohibiting threats, is not. The Court concluded that the legislature, "having required that the first two offenses must meet the test of obscenity, deliberately chose to omit that limitation in the case of threatening language." Rives v. Commonwealth, 284 Va. 1, 3, 726 S.E.2d 248, 250 (2012).

Appellant contends the words spoken were not obscene, nor did they threaten any illegal or immoral acts.[5] We first address the "threats" component of the statute.

In Rives v. Commonwealth, 284 Va. 1, 726 S.E.2d 248 (2012), the Supreme Court of Virginia affirmed a conviction under Code § 18.2-427. Rives telephoned his former lover and said "Hey bitch! You want to wonder why you don't have any friends? Bitch! I'm going to fuck you in the worst fucking way. You understand me? . . . Hope you're having a good time with this shit. And what's going to happen is not going to be pretty." The Supreme Court of Virginia concluded the above language was sufficient "to enable a rational fact-finder to conclude that [Rives] was threatening [the victim] with physical injury in the form of a sexual offense . . . ." Id. at 4, 726 S.E.2d at 250.

Among the statements relied upon by the Commonwealth to prove an alleged threat, we see nothing in statements 1, 3, 4, and 7 to even suggest a threat of an illegal or immoral act. The Commonwealth does not indicate what illegal or immoral acts were threatened.

As to the facts set forth in numbers 1, 3, 4, and 7, we find as a matter of law there were no threats. Finding that no ordinary, reasonable recipient who is familiar with the context of the voicemails would interpret them as a threat, it was not for the jury to determine whether those words constituted a threat.

We cannot say the same for numbers 2, 5, and 6. Statement number 2 could be interpreted in several ways. It could threaten W.F.'s person, or it could mean merely that fate will punish W.F. and M.F.

---

[5] Appellant argues that because she made the statements out of anger and frustration, they are not threatening. To support her argument, she relies on Lofgren v. Commonwealth, 55 Va. App. 116, 684 S.E.2d 223 (2009). Lofgren, an obscenity case, found the language was not obscene because it simply expressed Lofgren's "frustration, anger, contempt or disgust." Here, appellant's intent or motivation is not relevant to whether her language constituted threats. Unlike obscenity cases, we do not address the "dominant theme" of the statements, but only whether they threaten illegal or immoral conduct.

In her brief, referring to number 5, appellant states: "While this could possibly constitute a threat, the action that accompanies it shows that this language does not fall in the statute." It is the role of the fact finder to determine whether this language could possibly constitute a threat, including the context in which the statements were made.

Number 6 could be interpreted as a threat to commit an illegal act – "You're going down, she's going down" or it could simply imply that when the truth comes out, W.F. and M.F. will be shown to be liars. Again, this is for the jury to decide.

We note that appellant was indicted under Code § 18.2-427 for using obscene language or threatening an illegal or immoral act. The jury instruction, noting that appellant was charged with "telephone threats," listed the elements of that offense as using "indecent or vulgar, or profane language" OR "threatened an illegal or immoral act."

Both the attorney for the Commonwealth and defendant's counsel argued each of the statute's components to the jury.

The jury verdict read "We the jury, find the defendant guilty of telephone threats . . . ." In accordance with the general verdict, the trial court found appellant guilty of two counts of telephone threats. The conviction order and sentencing order refer to the offense as "telephone threats."

The correct interpretation of appellant's voicemail statements must be determined by the fact finder, based on whether a reasonable recipient would interpret her remarks as threats. This is a jury issue.

Thus, our sufficiency analysis need only determine whether the evidence is sufficient to raise a jury issue. The issue is not whether the language in question constitutes a threat, but whether these statements create a jury issue as to threats. See Allmon v. Commonwealth, 43 Va. App. 104, 111, 596 S.E.2d 531, 535 (2004).

- 5 -

United States v. Maisonet, 484 F.2d 1356 (4th Cir. 1973) is instructive. There, Maisonet, an inmate in a federal prison, wrote his sentencing judge "I may have to go all my ten (10) years, but if I ever get out of here and nothing happen[s] to me while I am in here, you will never be able to be prejudice [sic] and racist against another Puerto Rican like me." The letter was addressed to the judge at his home address. Maisonet was convicted under 18 U.S.C. § 876 (1970), which prohibits mailing a letter "containing . . . any threat to injure the person of the addressee." Id. at 1357. In affirming the conviction, the Fourth Circuit held:

> If there is substantial evidence that tends to show beyond a reasonable doubt that an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury, the court should submit the case to the jury. Maisonet's letter itself and the following facts established that the government's proof was sufficient to enable the jury to find beyond a reasonable doubt that the letter constituted a threat and Maisonet intended it as such: Maisonet had been sentenced to prison by the judge to whom he addressed the letter; he considered the sentence to be illegal; he charged that the judge was motivated by prejudice and racism; he addressed the letter to the judge's home.

Id. at 1358.

The Commonwealth only had to prove the existence of one component of the statute, as the statute is written in the disjunctive. In enacting Code § 18.2-427, the General Assembly chose to use the disjunctive "or," rather than the conjunctive "and." "'[T]he use of the disjunctive word "or," rather than the conjunctive "and," signifies the availability of alternative choices.'" Rose v. Commonwealth, 53 Va. App. 505, 514, 673 S.E.2d 489, 493 (2009) (quoting Lewis v. Commonwealth, 267 Va. 302, 314-15, 593 S.E.2d 220, 227 (2004)).

Having found the evidence of threats was sufficient to go to the jury, we need not address appellant's other argument as to obscenity. Even assuming, *arguendo*, that the evidence was insufficient to prove obscene language, there was adequate evidence in the record to send the issue of threats to the jury. We therefore decline to disturb the jury's verdict. See generally

United States v. Townsend, 924 F.2d 1385, 1414 (7th Cir. 1991) (holding that on appeal, a jury's verdict will not be negated on the chance "that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient"). See also Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (holding that when a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court and, if we so find, need not address the other grounds).

The evidence before the jury constitutes a "freestanding basis" to support appellant's conviction for telephone threats. See Johnson v. Commonwealth, 45 Va. App. 113, 117, 609 S.E.2d 58, 60 (2005).

For the reasons stated, we affirm the judgment of the trial court convicting appellant of Code § 18.2-427.

## II. Interfering

Appellant next challenges her conviction for interfering with a 911 phone call. She alleges the evidence was insufficient, maintaining that she did not interfere with the 911 call, nor did she disable or destroy the telephone. She argues that the 911 call made by her husband was completed when he informed the 911 dispatcher of his home address and phone number and asked for an ambulance.

The facts in this case are uncontroverted. Because this is a question of law involving the construction of Code § 18.2-164, we review the trial court's determination *de novo*. Questions of pure statutory construction are considered *de novo*. See Conkling v. Commonwealth, 45 Va. App. 518, 520-21, 612 S.E.2d 235, 236-37 (2005) (citing Mattaponi Indian Tribe v. Dep't of Envtl. Quality ex rel. State Water Control Bd., 43 Va. App. 690, 707, 601 S.E.2d 667, 675

(2004)); see Copeland v. Commonwealth, 42 Va. App. 424, 437, 592 S.E.2d 391, 397 (2004) (holding that when the facts are not in dispute, the Court will analyze the legal issue *de novo*).

Code § 18.2-164 states in part:

> B.  If any person, with the intent to prevent another person from summoning law-enforcement, fire, or rescue services:
>
> 1.      Commits any act set forth in subsection A; or
>
> 2.      Maliciously prevents or interferes with telephone or telegraph communication by disabling or destroying any device that enables such communication, whether wired or wireless, he is guilty of a Class 1 misdemeanor.[6]

The elements of subsection B are:  1) malicious prevention of or interference with telephone or telegraph communication, and 2) disabling or destroying any device that enables such communication.  We first address whether appellant disabled or destroyed the communication device.  The Commonwealth argues that appellant disabled the phone by taking the victim's cell phone and leaving the line open for 40 minutes, preventing the victim from using the phone.  The Commonwealth equates disabling the phone itself with interfering with the victim's ability to use the phone.  This argument ignores the language of the statute.

It is apparent from the language of the statute that appellant must disable or damage the actual device, not simply make it more difficult for the user to use the device.  Part (B)(2) proscribes the disabling or destroying of "any device that enables such communication . . . ." The plain, unambiguous language of the statute requires that the device itself must be disabled or destroyed by appellant.

---

[6] At trial, the Commonwealth's case was premised on a violation of Code § 18.2-164(B)(2), and the jury was so instructed.  Thus, our analysis is limited to that subsection and does not include Code § 18.2-164(A) or Code § 18.2-164(B)(1).

While we acknowledge that "penal statutes are to be strictly construed against the Commonwealth, Harward v. Commonwealth, 229 Va. 363, 365, 330 S.E.2d 89, 90 (1985), courts are nevertheless bound by the plain meaning of unambiguous statutory language and 'may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated.'" Gunn v. Commonwealth, 272 Va. 580, 587, 637 S.E.2d 324, 327 (2006) (quoting Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003)).

> Where bound by the plain meaning of the language used, we are not permitted "to add or to subtract the words used in the statute." Posey v. Commonwealth, 123 Va. 551, 553, 96 S.E. 771, 771 (1918). This canon flows from the principle that "[w]e must . . . assume . . . the legislature chose, with care, the words it used when it enacted the relevant statute." Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990). Because we assume the legislature carefully chose the words used, it is our duty "to give reasonable effect to every word." Jones v. Conwell, 227 Va. 176, 180-81, 314 S.E.2d 61, 64 (1984); Moyer v. Commonwealth, 33 Va. App. 8, 35, 531 S.E.2d 580, 593 (2000) (*en banc*). In giving reasonable effect to every word, we presume the legislature used the word in its ordinary sense in the absence of a specific, statutory definition. Moyer, 33 Va. App. at 35, 531 S.E.2d at 593.

Coles v. Commonwealth, 44 Va. App. 549, 557-58, 605 S.E.2d 784, 788 (2004).

Webster's Third New International Dictionary 615 (1993), defines "destroy" as "to ruin the structure, organic existence, or condition of; to ruin completely or injure or mutilate beyond possibility of use." The term is further defined as "to reduce (an object) to useless fragments, a useless form, or remains, as by rending, burning, or dissolving; injure beyond repair or renewal; demolish; ruin; annihilate." http://www.dictionary.reference.com/browse/destroy (last visited March 19, 2013).

"Disable" is defined as "to make incapable or ineffective;" Webster's, supra, at 642, "to make unable or unfit; weaken or destroy the capability of; cripple; incapacitate," http://www.dictionary.reference.com/browse/disable (last visited March 19, 2013).

Here, the Commonwealth does not contend the phone call itself was rendered unfit, crippled, or incapacitated, only that the victim was unable to use the cell phone. As stated earlier, the physical condition of the phone is the subject of the statute. We further note the Commonwealth never argued the cell phone was destroyed.

Extending the Commonwealth's disability argument would create a violation of Code § 18.2-164(B)(2) if the perpetrator locked the cell phone in a closet, thus preventing the user from accessing the device. Code § 18.2-164(B)(2) does not include a situation where a perpetrator prevents the victim from calling 911 by threats of bodily harm, when the telephone is not compromised. This scenario ignores the literal reading of the words, "destroy" or "disable."

It is interesting to note that Code § 18.2-164(A)(4) proscribes willfully or maliciously preventing, obstructing or delaying by any means telephonic or telegraphic communications. This subsection does not limit the means of interference nor is it limited to emergency calls. However, under Code § 18.2-164(B)(2) the prevention or interference with such communication is not sufficient for a conviction. Additionally, the perpetrator must disable or destroy the device. Such did not occur here.

Having found appellant did not disable or damage the victim's cell phone, we need not address whether appellant interfered or prevented the emergency call. See Luginbhyl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*) (holding that "we decide cases 'on the best and narrowest ground available'" (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring))).

CONCLUSION

The evidence supporting Code § 18.2-427 was sufficient to send the issue to the jury, thus we will not disturb their verdict. However, the evidence was insufficient to show that

appellant destroyed or disabled the cell phone, so we will reverse her conviction under Code

§ 18.2-164(B)(2) and dismiss the indictment.

Affirmed, in part,
and reversed and
dismissed, in part.

Alston, J., concurring, in part, and dissenting, in part.

I concur in the majority's analysis of appellant's appeal of her conviction under Code § 18.2-164. However, because I disagree with the majority's affirmance of appellant's convictions under Code § 18.2-427, I respectfully dissent from the majority opinion regarding this assignment of error.

Essentially my disagreement with my learned colleagues relates to the consideration of the context of appellant's voicemails. In my view, the majority isolates the "threatening" portions of the comments and considers them apart from the voicemail messages as a whole. Respectfully, only by doing so is it possible to interpret appellant's statements as threats to commit illegal acts. Because I find that no ordinary, reasonable recipient who is familiar with the context of appellant's voicemails would interpret them as a threat, I conclude that it was not for the jury to determine whether appellant's statements constituted "threat[s] of any illegal or immoral acts." Code § 18.2-427. Accordingly, I would reverse appellant's convictions under Code § 18.2-427.

In interpreting appellant's statements, the majority considers the voicemail messages at issue herein in their factual context but does not, in my view, equate enough significance to the context of appellant's statements. In short, husband obtained a protective order that resulted in appellant and her daughter being evicted from their residence. Appellant believed that her friends, W.F. and M.F., encouraged husband to obtain the protective order and, consequently, blamed W.F. and M.F. for the dissolution of her marriage and her eviction from her home. It is in that factual backdrop that appellant left the two voicemail messages directed at W.F. and M.F.

Respectfully, I submit that to assess the criminality of appellant's statements, they must be viewed in their complete context, which would also include the parts of appellant's statements that preceded and followed the alleged "threatening" comments. It is my view that the majority

isolates words, thus diminishing context. Moreover, by considering appellant's "threatening" statements as isolated comments, without any reference to appellant's broader message, appellant's statements considered in their factual context and in the context in which they were spoken, as a matter of law, could not be interpreted as threats of illegal or immoral acts. With all due regard to the province of the factfinder to weigh the facts and consider the evidence, it still must be determined as a matter of law by this Court, whether *in its context,* the language was threatening the victim with illegal or immoral acts. Contrary to the majority, I would give more significance to the context of the purported threats in addition to the "illegal or immoral" aspect of the purported threat. I respectfully submit that on appellate review a statement should not be parsed to support its factual and or legal sufficiency. Is this nasty language? Yes. Is this communication foul and repugnant? Absolutely. But in full context, does the language satisfy the requirements of Code § 18.2-427? I would conclude that it does not. In appellant's first message (which includes what the Commonwealth and the majority label statement #2) she expressed her anger at the role she perceived W.F. and M.F. played in the dissolution of her marriage and her eviction. Appellant's message stated, in relevant part,

> [y]ou are the one that . . . you and your fucking wife tried to destroy my fucking life . . . . I'm tired of y'all bitches fucking with me, now you want to destroy my fucking mother fucking life. Y'all gonna get every mother fucking thing that's coming back to you because karma is a fucking bitch . . . . Now you live with that and you deal with that . . . . [A]ll y'all can go to mother fucking hell, after everything I did for y'all all the fucking years. Fuck you, and the horse you rode in on.

The statement, "Y'all gonna get every mother fucking thing that's coming back to you because karma is a fucking bitch," read apart from the sentences that preceded and followed it, could be interpreted as a vague threat. But what the assembled words could mean in isolation does not address what an ordinary, reasonable recipient familiar with the context of the voicemail message would understand the statement to mean. In essence, appellant's message

- 13 -

drew a moral comparison, contrasting W.F. and M.F.'s alleged attempts to "destroy [her] . . .

life" with (what she believed to be) her kindness toward them. Appellant then admonished W.F.

and M.F. for their behavior toward her and tasked them with having to live with the knowledge

of what they did to her. Appellant's language is vulgar and at times offensive, but appellant did

not threaten to harm W.F. or M.F. herself, and no ordinary, reasonable recipient familiar with

this context could interpret appellant's statement regarding karma as threatening physical harm

to W.F. or M.F.[7]

The majority also concludes that appellant's second message included statements that

were susceptible to two interpretations, one of which constituted a threat of illegal acts, and it

was the role of the factfinder to determine which interpretation was applicable considering the

circumstances of this case.[8] Specifically, the majority reasons that appellant's statement,

"You're going down, she's going down," could be interpreted as either a threat to commit an

illegal act *or* could simply imply that W.F. and M.F. will be exposed as liars. I disagree.

The second message states, in relevant part,

> [C]heck your mother fucking selves because you done fucking
> crossed the line and I'm going down . . . all y'all mother fuckers
> going down with me *because I'm telling it all*, everything mother
> fucking thing I know, every mother fucking thing you said to me
> about [M.F.], every mother fucking thing [M.F.] said to me about
> you, *I'm fucking telling you fucking judge, I'm telling my God*

---

[7] Whether appellant's statements could be construed as threatening illegal or immoral acts is an objective inquiry. Nevertheless, I find the recipients' subjective views consistent with what I believe to be the only interpretation of appellant's statement. Neither W.F. nor M.F. testified that they felt threatened by appellant's messages. Rather, when asked for her initial reaction to the voicemail messages, M.F. testified simply, "I was hurt."

[8] The majority notes that appellant stated on brief that statement number 5-- "All y'all mother fuckers going down with me because I'm telling it all, everything mother fucking thing I know"-- "could possibly constitute a threat," but that contracts the theory of appellant's argument as well as our inquiry on appeal. As appellant argues on brief, it is not enough to simply point out that appellant's statements could be interpreted as threats, the statements must "threaten[] *an[] illegal or immoral act* with the intent to coerce, intimidate, or harass a[] person." Code § 18.2-427 (emphasis added).

> *damn attorney.* Y'all got me and my fucking child displaced, after
> all the love I've showed you and your fucking children over the
> years . . . . [Y]'all decide you're gonna fuck up my mother fucking
> life, but guess what, y'all gonna meet fucking ghetto because guess
> what, it's all going down. You're going down, she's going down,
> *all the mother fucking truth coming out.*

(Emphasis added).

I see nothing in appellant's second message that could be interpreted as threatening an illegal act. As is clear from the transcript of the voicemail message, appellant specified what she meant by the statement, "You're going down, she's going down," by going on to say in the same sentence, "all the . . . truth coming out."[9] But even if that statement was ambiguous, the context

_____

[9] If the context was different and appellant had simply stated, "You're going down, she's going down," then appellant's statement could have a number of meanings, one of which could constitute a threat of an illegal or immoral act. That appellant explicitly stated what she meant by "You're going down," however, precludes a reasonable recipient of her message from interpreting the statement as a threat of physical violence. Appellant's additional explanation differentiates this case from United States v. Maisonet, 484 F.2d 1356 (4th Cir. 1973), which the majority cites as instructive, as well as our previous decision in Witts v. Commonwealth, No. 0078-94-1, 1995 Va. App. LEXIS 317 (Apr. 4, 1995).

In Maisonet, the Fourth Circuit considered the defendant's conviction under 18 U.S.C. § 876 (1970), which prohibits mailing a letter "containing . . . any threat to injure the person of the addressee." 484 F.2d at 1357. At issue was a letter written by the defendant to the trial judge who sentenced him to prison in which the defendant stated, "I may have to do all my ten (10) years, but if I ever get out of here and nothing happen[s] to me while I am in here, you will never be able to be prejudice[d] and racist against another Puerto Rican like me." Id. At trial, the defendant asserted that "he did not mean the letter to threaten physical harm to the judge, rather he intended to seek the judge's removal from office." Id. The Fourth Circuit affirmed the defendant's conviction and held that the evidence presented an issue of fact for the jury. Id. at 1359. In reaching that conclusion, the court noted that the defendant "said nothing in the letter about having the judge investigated or about seeking his removal." Id. at 1358.

Similarly, in Witts, we affirmed a defendant's conviction under Code § 18.2-427. No. 0078-94-1, 1995 Va. App. LEXIS 317. There, the defendant had been involved in a personnel dispute with his employer that culminated in the defendant being fired. Id. at *1-2. After receiving the news that he was being let go, the defendant phoned his personnel manager and told him that "[he] had some fireworks [for him]" and that he was going to "bring [him] down." Id. at *2. At trial, the defendant asserted that he intended the statement to mean that "he was going to get an attorney and fight his termination," but he did not mention hiring an attorney and fighting his termination, and the personnel manager interpreted the statement as a threat. Id. at *3. In affirming the defendant's conviction, we held that "when a statement is made over a telephone that is subject to being interpreted as harassment or an illegal threat, even though the sender claims a different meaning was intended, a question for the factfinder is presented as to which is applicable considering the particular circumstances." Id. at *4-5.

- 15 -

of the second voicemail message clarifies its meaning.  Appellant stated earlier in the message that if she went down, then W.F. and M.F. were going down with her because she was going to tell her attorney and the judge everything she knew and everything W.F. and M.F. said about one another.  In my view, there is nothing in this record that identifies what illegal or immoral act this statement could be construed as threatening.  The Commonwealth, in turn, simply asserted that "the jury was able to weigh the evidence against the testimony and determine whether [appellant] threatened the illegal and immoral acts of telling untruths about [W.F. and M.F.] in court."  However, appellant explicitly threatened to tell the *truth*, so even viewed in the light most favorable to the Commonwealth, there is nothing in the record to support the jury's finding that appellant threatened such an illegal or immoral act.  Accordingly, I find that no reasonable juror could conclude that appellant threatened *illegal or immoral* acts with the intent to coerce, intimidate, or harass either W.F. or M.F.

For these reasons, I respectfully dissent.

---

In contrast to both of these cases, appellant in the instant case did more than make a simple statement that, by itself, could constitute a threat.  Instead, appellant went on to explain her statement, making clear that she was not threatening an illegal or immoral act.  Therefore, the case at bar is distinguishable from <u>Maisonet</u> and <u>Witts</u>.